LUTZ et al. v. KALMUS et al.

(Supreme Court, Appellate Term. March 5, 1909.)

1. BANKRUPTCY (§ 425*)—DISCHARGE—ESSENTIALS.

In order that a bankrupt may be discharged from his debts, he must prove that the debt had been duly scheduled or that the creditor had notice or actual knowledge of the bankruptcy proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 775; Dec. Dig. § 425.*]

2. PARTNERSHIP (§ 219*)—ACTION—SERVICE—JUDGMENT.

Service of process on one member of a firm is sufficient to authorize judgment against the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 436, 437; Dec. Dig. § 219.*]

3. BANKRUPTCY (§ 31*)—SCHEDULES—DISSOLVED PARTNERSHIP.

Where, after the recovery of a judgment against a bankrupt, plaintiff firm was dissolved by the death of the senior member, the scheduling of the debt under the name of the firm recovering the judgment did not invalidate the schedules.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 28, 29; Dec. Dig. § 31.*]

4. BANKRUPTCY (§ 31*)—SCHEDULES—RESIDENCE OF CREDITOR.

Bankr. Act July 1, 1898, c. 541, § 7, subd. 8, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3425), requires a bankrupt to prepare, make oath to, and file in court a schedule of his property and a list of his creditors, showing their residence, if known, and, if unknown, to state the fact. *Held*, that where a bankrupt positively stated in his schedule that the residence of plaintiff, a judgment creditor, was unknown, and it appeared that he had made a reasonable effort to ascertain plaintiff's residence, and that there was no fraud, the requirements of the act were fully complied with.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 28, 29; Dec. Dig. § 31.*]

5. BANKRUPTCY (§ 31*)—SCHEDULES—CREDITOR'S RESIDENCE—DILIGENCE.

A question of diligence in ascertaining the correct residence of a creditor of a bankrupt enters into the question as to whether the debt has been properly scheduled only so far as it affects the good faith of the debtor's statement in the schedule that such residence is unknown.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 28, 29; Dec. Dig. § 31.*]

6. BANKRUPTCY (§ 419*)—SCHEDULES—VALIDITY—ATTACK.

Where a bankrupt's schedules were fair on their face and in accordance with the requirements of the bankruptcy act, their validity could not be

*For other cases see same topic & §.NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tried on affidavits on a motion in an inferior court to cancel a judgment against the bankrupt after his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 847; Dec. Dig § 419.*]

MacLean, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by John Lutz and another against Philip Kalmus and another. From an order of the City Court granting the motion of defendant Kalmus to cancel a judgment in favor of plaintiffs, they appeal. Affirmed.

Argued before GILDERSLEEVE, P. J., and MacLEAN and DAYTON, JJ.

David J. Gladstone, for appellants.
Isaac V. Schavrien, for respondent Kalmus.

GILDERSLEEVE, P. J. On November 12, 1891, John and Charles F. Lutz, of this city, recovered a judgment against Philip Kalmus and Charles Myers, copartners. In 1898 John Lutz died, leaving Charles the sole surviving plaintiff and creditor. In February, 1906, Kalmus was adjudged a bankrupt, and was thereafter duly discharged as such on May 21st of that year. In December, 1908, Kalmus obtained an order to show cause why the judgment should not be canceled and discharged of record, and the appellant herein opposed such motion. The motion was granted, and from the order made the judgment creditor appeals.

The debtor scheduled the plaintiff's claim as follows:

| Names of Creditors. | Residence (if Unknown, That Fact must be Stated). | When and Where Contracted. | Nature and Consideration of Debt, etc. | Amount. |
|---|---|---|---|---|
| John Lutz & Son | Residence unknown, business unknown, last at northwest corner of Spring and Mercer Sts., Borough of Manhattan, now out of business. | Sept., 1890. Borough of Manhattan, New York City. | Merchandise as partner of Charles F. Myers, sued, but no judgment entered. | $244.90 |

The grounds urged by the appellant for the reversal of the order are, in substance, that the debt was not properly scheduled and that the debtor did not use due diligence in ascertaining the address of the judgment creditor when he scheduled the debt. No fraud by way of assertion or concealment is asserted or claimed by the plaintiff.

One of two essentials are necessary to be shown by a bankrupt before he can be discharged from his debt, namely, proof that the debt has been properly scheduled or that the creditor had notice or actual knowledge of the proceeding. Graber v. Gault, 103 App. Div. 511, 93 N. Y. Supp. 76. The plaintiffs, at the time the judgment was obtained, were silk merchants doing business under the name of John

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Lutz & Son, and the judgment debtors were Kalmus & Myers, co-partners. That Charles F. Lutz was the sole surviving partner was not apparent when the schedule was made, and there is not the slightest evidence that the debtor knew that Charles F. Lutz, the present creditor, was the "Son" in the firm, as it is testified to by the debtor that no personal service of any process or complaint or any order in the action was ever served on him. Service on Myers alone was sufficient to authorize the judgment to be entered against the firm. The scheduling of the debt under the name of John Lutz & Son was, therefore, proper and did not invalidate the schedule. Wheeler v. Emmeluth, 58 Hun, 369, 12 N. Y. Supp. 58, affirmed 125 N. Y. 750, 27 N. E. 408. The bankruptcy act (Act July 1, 1898, c. 541, § 7, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]) provides that:

"The plaintiff must * * * (8) prepare and make oath to and file in court * * * with the petition * * * a schedule of his property * * * and a list of his creditors, showing their residences, if known, and, if unknown, that fact to be stated."

In the schedule filed by the debtor herein, there is the positive statement that the residence of the judgment creditor is unknown. The provision of the bankruptcy act is therefore fully complied with. The added statement, in the schedule, regarding the creditor's business address, is of no consequence, was not essential, and does not affect the sufficiency of the schedule in any way whatever. It was neither the giving of a wrong residence address, nor an attempt to give a right residence address, and those added words cannot deprive the debtor of the benefit of the act. The cases cited by the appellant are not in point. They are cases similar to that of Sutherland v. Lasher, 41 Misc. Rep. 249, 84 N. Y. Supp. 56, where, instead of stating that the address was "unknown" an indefinite or wrong address had been given. In the case at bar no attempt is made to give the residence. It is plainly stated to be unknown. The addition of a former location of the creditor's business, even if afterwards ascertained to be erroneous, is of no moment. In the case of In re Mollner, 75 App. Div. 441, 78 N. Y. Supp. 281, Mr. Justice Patterson, writing for the Appellate Division, says:

"Where a bankrupt, in a schedule filed by him in the bankruptcy proceedings, states that a certain judgment creditor's address is unknown, the fact that it subsequently appears that the bankrupt called at such judgment creditor's house over two years prior to the institution of the bankruptcy proceeding will not render the discharge in bankruptcy ineffectual to bar the judgment creditor's claim, in the absence of evidence that the statement in the schedule that the judgment creditor's address was unknown to the bankrupt was fraudulently inserted, or that at the time the petition in bankruptcy was filed the bankrupt knew that the judgment creditor still lived in the house at which he had called."

This case was cited with approval in Lent v. Farnsworth, 94 App. Div. 99, 87 N. Y. Supp. 1112, and the Lent Case was affirmed by the Court of Appeals. 180 N. Y. 503, 72 N. E. 1144. It would appear, therefore, that the plaintiff's claim was properly scheduled.

The question of diligence in ascertaining the correct residence of the creditor can enter into the case only in so far as it affects the good faith of the debtor's statement in the schedule that such residence was

"unknown." Of course, a debtor cannot schedule the residences of his creditors as unknown if their residences are known to him, and undoubtedly he must make a reasonable effort to ascertain the residence of a creditor, if such address is unknown. Whether or not the debtor, in the case at bar, used due diligence in ascertaining his creditor's address, was purely a question of fact for the determination of the lower court, upon all the evidence presented to it, and unless this court is prepared to overthrow a long-established and well-known rule of law, the statements in the affidavits submitted on the part of the debtor must be taken as true, and the decision of the lower court thereon should not be disturbed. It must be borne in mind that the judgment was rendered some 15 years prior to the time the schedule was filed. The debtor swears in his affidavit, used upon the motion, that at the time he prepared the schedules in bankruptcy he made inquiry among divers silk merchants in this city for the residence or business address of the plaintiff's firm and could gain no information. The City Directory also failed to disclose such address. He went to the place where the plaintiffs were formerly engaged in business, and made inquiries of the janitor and other people located in said building, without result. Search was also made in the Telephone Directory, but he was unable to find plaintiff's name therein. One Root testifies that he searched the City and Telephone Directories, and took therefrom the name, and mailed to each "Lutz" appearing therein, in a postpaid wrapper, a letter asking if the party was a member of the firm of John Lutz & Son, silk merchants, and, if so, to so inform the writer, but that no answers were received. Root also called upon the attorney who appeared for and obtained the judgment for John Lutz & Son, and was informed by him that he could not give the address of the plaintiff. This last statement is denied by said attorney; but a reading of his affidavit shows that, while he swears he "did not state to Root that he did not know the address of the firm of John Lutz & Son, but that John Lutz was dead," he also says:

"That as to Charles F. Lutz he had retired from business, and that his address was in the directory and could be easily ascertained. That the address in the directory in 1905 and 1906 was 251 West Ninety-Second street."

Whether or not this last-quoted statement was made to Root does not definitely appear; but upon this disputed question the court below had a right to, and did, find that the statements of the debtor and Root were true, and there is no reason for holding otherwise. It is clear, therefore, that the debt was properly scheduled, and the court below was fully justified, from the evidence, in holding that the debtor had in good faith and with due diligence endeavored to ascertain the residence of the creditor, and was fully warranted in scheduling his address as unknown.

It is urged with much force by the respondent, and his position seems to be well-founded and supported by authority, that the sufficiency and validity of a schedule in bankruptcy, which on its face is fair and in accordance with the provisions of the bankruptcy act, cannot be attacked in this manner, and the issue of its sufficiency and validity tried by affidavits. A careful examination of that line of

cases similar to Westheimer v. Howard, 47 Misc. Rep. 145, 93 N. Y. Supp. 518, Weidenfeld v. Tillinghast, 54 Misc. Rep. 90, 104 N. Y. Supp. 712, and Haack v. Theise, 51 Misc. Rep. 3, 99 N. Y. Supp. 905, wherein the sufficiency of a schedule in bankruptcy had been questioned, will show that the debt was so improperly scheduled as to be substantially an entire noncompliance with the act, thus in fact being equivalent to no scheduling at all. In such cases the courts have properly held that the debtor was not discharged. On the other hand, in the Mollner Case, supra, the court said:

"It is nowhere directly alleged by Moore, nor is there any proof to show, that the statement that his address was unknown to Mollner was fraudulently inserted in the petition or schedule in bankruptcy. It is doubtful, under such circumstances, whether the discharge can be attacked collaterally in this proceeding."

This case has not only never been reversed, although so claimed to be in appellant's brief, but was cited with approval in Lent v. Farnsworth, supra, and the Lent Case, as before stated, was affirmed by the Court of Appeals. In the Lent Case the court went farther and said:

"Two facts are important. There is no claim of fraud; no pretense that the defendant was seeking to evade the giving of the notice. The notice in fact was not mailed by him, but under the direction of the referee in bankruptcy, and in compliance with an order of the United States District Court which had charge of the proceeding. The evidence shows without dispute that the bankrupt had no assets to distribute, and consequently no injury has resulted to Mrs. Lent or any one from the omission to receive the notice. Had the defendant stated in his schedule that the residence of the judgment creditor was unknown to him, without question his discharge could not be successfully assailed. * * * Again, it is to be remembered that the application is not made to open the decree in the proceeding itself. If there was any fraud or wrongdoing charged, or any injustice perpetrated, the court granting the decree could set it aside at the instance of the party wronged. This order, however, although on the defensive, in effect is a collateral attack on the judgment of that court."

It may also be observed that in the Lent Case, as in this, the opposition "is based wholly upon the naked fact that the notice served was inadequate." It would seem, therefore, that, when a debt has once been prima facie properly scheduled, the only attack which can be made, for want of good faith or fraud on the part of the debtor in making it, must be made directly and not collaterally, and not by way of affidavits on a motion in an inferior court.

The case of Columbia Bank v. Birkett, 174 N. Y. 112, 66 N. E. 652, 102 Am. St. Rep. 478, has no application to the facts here. In that case the claim had been transferred to the plaintiff before the commencement of the bankruptcy proceeding. The bankrupt had actual knowledge of the fact that the plaintiff was then the owner and holder of the same. The creditor had no knowledge or notice of the proceeding, and no attempt whatever was made to serve any notice upon him. It was a palpable evasion of the requirement of the act, and the court in its opinion held substantial rights of the plaintiff were affected by the action taken.

The case at bar falls within the Lent Case for another reason. There the court said:

"Not every omission or error will make insolvent proceedings void. If honestly prosecuted, the inclination and duty of the court will be to disregard errors that have not caused injury."

And again:

"It is not alone for the benefit of the bankrupt, but to secure an equitable distribution of his assets among his creditors."

In the case at bar it was undisputed and shown by proof that there was no dividend declared to any creditor, and that the debtor was without assets of any kind. The creditor now seeks to obtain after-acquired property upon a judgment against which the statutory presumption of payment has nearly·run, and asks the court to lend its aid in an attempt to collect the same, and to practically set aside bankruptcy proceedings, instituted and carried on in perfect good faith, and thus deprive the debtor of the benefits of a statute which was intended to permit honest debtors to again resume business relations with the world and by industry add to the wealth of the land.

Order affirmed, with $10 costs and disbursements.

DAYTON, J. (concurring). Assuming, as we must from the bankruptcy records, that the notice was properly mailed, the erroneous address "Spring and Mercer street" is immaterial, for the reason that the postal service is such that it would have been delivered at Grand and Mercer streets. It may therefore be assumed presumptively that it was so delivered.

The order should be affirmed, with costs.

MacLEAN, J. (dissenting). Praying for an order discharging and canceling a judgment, vacating a writ of execution, and canceling a notice of levy filed December 16, 1908, affecting premises No. 354 Willis avenue, borough of the Bronx, the respondent deposed December 18, 1908, that on May 21, 1906, he had been adjudicated a bankrupt on his voluntary petition filed February 6, 1906, and so discharged from the payment of his debts and liabilities, including the judgment mentioned above for $285.56, recovered and docketed November 12, 1891, against himself and one Charles Myers, his partner, by the above-named plaintiffs. That the formal adjudication in bankruptcy be efficient for the discharge of a debtor provable against an estate, it is, among other things, requisite that the debt be properly scheduled and that the individual creditor have proper notice or actual knowledge of the proceedings in time to prove his claim and enjoy the opportunities by the act provided for creditors, such as participation in the selection of a trustee and examination of the bankrupt. That is important, too, so that other creditors have proper prima facie advertisement respecting the intending bankrupt's estate and of the claimants against it. In the schedule verified by Kalmus were inserted as the name of his creditor, "John Lutz & Son;" as the residence, "Residence unknown, business unknown, last at northwest corner of Spring and Mercer streets, borough of Manhattan, now out of business;" and as the nature and

consideration of the debt, "Merchandise, as a partner of Charles F. Myers, sued, but no judgment entered." ·

In these three items are misstatements and suppression of facts sufficient to invalidate the claim of Kalmus that the judgment of the plaintiffs against him was included in the formal discharge from all debts provable against his estate. As he himself deposes in his affidavit for present relief, he recollects the purchase from the firm of Lutz & Son of silk· to the amount of about $240; also that he was sued a considerable time thereafter for such sum, and had ·no knowledge, recollection, or belief of ·any further procedure until advised by his present attorney, when an examination disclosed that a judgment was entered .against him and his partner November 12, 1891, for $285. If the names of the members of the firm individually recited as parties plaintiff, in the action he recalled was brought against him, had escaped his memory, he might have looked through his own papers or asked them from his attorney of the time. Both failing, he should have searched the record, constructive notice to all the world, eke to himself. Missing the name of Lutz, the father, from the directory did not excuse him from learning and looking for the name of Lutz, the son, whose address the directory gave. ·Showing none of such inquiries, he is not to be credited by the credulous with the exercise of the diligence to which he was bounden. Were anything else wanting to impeach his discharge, the business address given by him as that of his creditor firm was misleading, purposely or otherwise, to all concerned, particularly to the clerk of the referee in bankruptcy, who sent out the notices to the addresses designated in the schedule. Charles F. Lutz, the surviving creditor, deposes that the firm never had its office at the place set down in the schedule, and the debtor now deposes that he looked for the firm at the last place he knew they were, viz., Spring and Mercer, as he then thought, and inquired of the janitor and other persons fruitlessly, but now recollects it ·was Grand and Mercer. The facts appearing make mock of the bare assertions of diligence on his part and of the inquiries of his attorney. ·No intending bankrupt may justify himself by· professions of good faith, but only by good works conforming to the statute. If by misbelief and mistaken faith he have misled himself to the disadvantage of the estate of his creditor deceased and to that of his creditor living, he may not shift the consequences to them and from himself.

The order appealed from should be reversed, with costs to the appellants.